UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **MICHAEL BUSHNELL** | : | **DOCKET NO. 16-cv-366** |
| **D.O.C. # 579518** | | |
| **VERSUS** | : | **JUDGE DOHERTY** |
| **N. DARREL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Michael Bushnell ("petitioner"). Doc. 1. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. N. Darrel Vannoy ("respondent"), warden at the Louisiana State Penitentiary, opposes the application. Doc. 22.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

### I.
#### BACKGROUND

*A. Conviction*

The petitioner was indicted on one count of second degree murder in the 13th Judicial District, Evangeline Parish, Louisiana. Doc. 22, att. 2, p. 9. The charge related to the shooting of

his nineteen-year-old son, Michael Scott Bushnell, Jr. ("victim"), on April 20, 2009. *Id.*; *State v. Bushnell*, 2011 WL 6372857, *1 (La. Ct. App. 3d Cir. Dec. 7, 2011) (unpublished). Following a jury trial, he was convicted of the charged offense. Doc. 22, att. 6, p. 22. He was thereafter sentenced to life imprisonment. *Bushnell*, 2011 WL 6372857 at *1.

### B. Direct Appeal

The petitioner filed a direct appeal through counsel, raising the following assignments of error:

1. The evidence was insufficient to support the conviction.

2. The trial court erred in admitting evidence of the petitioner's marital problems.

3. The trial court erred in barring evidence from a defense psychologist.

*Id.* at *2–*8. He also filed a *pro se* brief, asserting that a number of witnesses had committed perjury. *Id.* at *8. The Louisiana Third Circuit Court of Appeal reviewed all of these claims and denied relief. *Id.* at *2–*9. The petitioner then sought review in the Louisiana Supreme Court, which review was denied on April 20, 2012. *State v. Bushnell*, 85 So.3d 1268 (La. 2012). He did not seek review in the United States Supreme Court. Doc. 1, p. 3.

### C. State Post-Conviction Relief

The petitioner then filed an application for post-conviction relief with the trial court on November 21, 2012. Doc. 22, att. 13, pp. 90–96. There he raised the following claims:

1. The state violated his right against self-incrimination.

2. He received ineffective assistance from trial counsel.[1]

---

[1] In the petitioner's original application for post-conviction relief, we can find only a general reference to Sixth Amendment rights under his self-incrimination claim. *See* doc. 22, att. 13, p. 93. However, at the evidentiary hearing he alleged that his attorney did not inform him of his right to testify or his right to remain silent at trial. Doc. 1, att. 4, pp. 51–52. He also argued that his attorney failed to "explain to the [jury] about my rights." *Id.* at 53. The record further reflects that both the Third Circuit and Louisiana Supreme Court construed an ineffective assistance claim

-2-

      3. The state's witnesses committed perjury.

*Id.* The trial court granted the petitioner's request for an evidentiary hearing on these claims as well as his request for appointment of counsel. Doc. 22, att. 14, pp. 1, 106. The hearing took place, with the petitioner represented by counsel, on February 6, 2014, and the court denied the application for oral reasons assigned at that hearing. *Id.* at 112; *see* doc. 1, att. 4, pp. 46–82 (hearing transcript). The petitioner then sought review in the Louisiana Third Circuit Court of Appeal, which denied his application as deficient under Uniform Rules–Court of Appeals 4-1 and 4-5 on September 11, 2014. Doc. 22, att. 14, p. 83. The petitioner filed another writ application on September 30, 2014, and the Third Circuit denied it. *Id.* at 85. He then sought review in the Louisiana Supreme Court, which denied same on February 5, 2016. *Id.* at 87. In an accompanying per curiam opinion, the court noted that the petitioner had shown no merit to his ineffective assistance claim and that the remaining claims were "repetitive and/or unsupported." *Id.* at 88 (citing LA. C. CR. P. arts. 930.2 and 930.4).

### D. Federal Habeas Petition

The instant petition was filed in this court on March 16, 2016. *See* doc. 1, p. 15 (date of filing under prison mailbox rule). Here the petitioner claims:

    1. His Fifth Amendment right against self-incrimination was violated when police obtained incriminating information from him before advising him of his *Miranda* rights.

    2. The evidence presented at trial was insufficient to sustain the conviction.

    3. The petitioner received ineffective assistance of counsel at trial.

Doc. 1, att. 2, pp. 10–24.

---

from the petitioner's writ applications on this matter. Doc. 22, att. 14, pp. 85, 88. Accordingly, we accept this claim as raised in the application for post-conviction relief.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

*A. Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

*B. Procedural Default and Exhaustion of State Court Remedies*

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural

default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[2] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456,

---

[2] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

*A. Timeliness*

The petitioner's conviction became final on July 20, 2012, when his time for seeking review in the United States Supreme Court on direct appeal expired. *See* Sup. Ct. R. 13. Thus **124 days** accrued toward his one year limit before he filed his application for post-conviction relief on November 21, 2012.

Under § 2244(d), only "properly filed" applications for post-conviction relief or other state collateral review can toll the one year limitation. "An application is '**properly** filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 121 S.Ct. 361, 364 (2000) (emphasis in original). Therefore the application for post-conviction relief did not toll the limitations period during the time it was rejected by the Third Circuit for failure to comply with applicable procedural rules. *E.g.*, *Clarke v. Rader*, 2012 WL 589207, *3–*6 (M.D. La. Jan. 20, 2012); *aff'd*, 721 F.3d 339 (5th Cir. 2013).

The limitations period was thus untolled on September 11, 2014, when the Third Circuit ruled that the petitioner's writ application was deficient. *See, e.g.*, *Smith v. Rogers*, 2014 WL 2972884, *4 (W.D. La. Jul. 2, 2014) (extending tolling until petitioner was notified of deficiency). Tolling resumed when the petitioner properly filed his writ application with that court on

September 30, 2014. In this period an additional **19 days** accrued. The limitations period was untolled once more with the Louisiana Supreme Court's ruling on February 5, 2016, allowing an additional **40 days** to accrue before the instant petition was filed. Thus only **183 days** have accrued against § 2244(d)'s one year limit and this matter is timely.

### B. Exhaustion of State Court Remedies and Procedural Default

The claims raised in the instant petition were exhausted and rejected on the merits in the state courts. Therefore no basis for procedural default exists.

### C. Substantive Analysis

Having determined that all claims are properly before this court, we now review them under the standards set out above.

#### 1. Miranda violation

The petitioner alleges that his constitutional rights were violated when the state, through two actors, obtained incriminating statements from him without advising him of his rights as required by *Miranda v. Arizona*, 86 S.Ct. 1602 (1966).

As respondent notes, the requirement that a suspect be notified of his rights applies only to custodial interrogations. *United States v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015), *cert. denied*, 135 S.Ct. 2821 (2015). "A suspect is . . . 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988)). Accordingly, we use a totality of the circumstances test to evaluate whether or not a suspect is in custody, looking to factors such as the length, location, and accusatory nature of questioning, the

amount of restraint on the suspect's physical movement, and statements made by law enforcement on the suspect's freedom to leave. *Id.* at 774–75 (citations omitted).

### *a. Statements to Michael Arnold*

The first part of this claim relates to statements made to Evangeline Parish Fire Chief Michael Arnold. Arnold was dispatched to the crime scene as an emergency first responder after the victim was shot. Doc. 22, att. 7, pp. 52–54. The petitioner was the first person Arnold encountered at that address. *Id* at 54. The petitioner verified that Arnold had the right address and invited him in. *Id.* Arnold testified that he asked the petitioner "what was going on, what was happening." *Id.* at 55. The petitioner replied that he had shot the victim. *Id.* Arnold stated, "I didn't want to judge anybody too harshly so I asked him what had happened . . . ." *Id.* The petitioner then told Arnold that he had shot the victim because he was "tired of the bullshit [and] it's not going to happen anymore." *Id.* Arnold noted that the petitioner's demeanor at this time was "calm and collected." *Id.* at 62. Other first responders then arrived and Arnold proceeded to render first aid to the victim. *Id.* at 56–58.

The petitioner argues that admission of these statements at trial violated his rights because Arnold never notified him of his *Miranda* rights. While the record does establish that Arnold briefly questioned the petitioner, there is no support for the notion that the encounter was custodial. The petitioner had initiated the encounter. He was not under arrest at that point, and the questioning was brief and non-accusatory. Accordingly, the petitioner does not show that *Miranda*'s notification requirement was triggered by this encounter and thus demonstrates no right to federal habeas relief under this portion of his claim.

### b. *Statements to Shane Guillory*

Sergeant Shane Guillory of the Evangeline Parish Sheriff's Office [EPSO] arrived at the scene shortly after Arnold. Doc. 22, att. 7, pp. 9, 56. He had dealt with members of the Bushnell family earlier on the day of the shooting when a dispute arose between the petitioner and his wife. *Id.* at 4–7. That night he was dispatched to the petitioner's home, with the dispatcher relating that a male subject had told law enforcement that he shot his son. *Id.* at 8–9. When Guillory arrived, the petitioner was still speaking with Arnold. *Id.* at 10. However, as Guillory got out of his vehicle, the petitioner walked over to him, turned around, and placed his hands behind his back. *Id.* According to Guillory, the petitioner then stated that he had shot his son following an argument and that "his son had beat him to a pulp at one time, [and] he was not going to allow it again." *Id.* Guillory then arrested the petitioner and put him in his (Guillory's) vehicle. *Id.* at 11. The petitioner made no further statement to Guillory during that encounter and Guillory began reviewing the crime scene. *Id.* at 11–12.

The petitioner alleges that admission of this statement at trial violated his rights because he was "still being questioned by [Arnold] when [Guillory] arrived" but that Guillory allowed him to continue speaking without advising him of his *Miranda* rights. Doc. 1, att. 2, p. 11. However, the petitioner does not establish that Guillory ever interrogated him or that Guillory's mere presence made the encounter a custodial one before the petitioner was placed under arrest. Thus the petitioner does not show that *Miranda*'s notification requirement was triggered and so does not establish a right to federal habeas relief based on introduction of statements he made to Guillory.

### 2. *Sufficiency of Evidence*

The petitioner next claims that the evidence introduced at trial was insufficient to sustain a conviction of second degree murder and that it instead supports a verdict of justifiable homicide or manslaughter.[3]

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense.[4] *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted). This court must also defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence. *Jackson*, 99 S.Ct. at 2789. Thus, under the standards of *Jackson* and § 2254(d), this court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012).

In Louisiana second degree murder is defined in part as the killing of a human being "[w]hen the offender has a specific intent to kill or inflict great bodily harm." LA. REV. STAT. § 14:30.1(A)(1). Specific intent may be inferred from the circumstances. *State v. Ordodi*, 946 So.2d 654, 661 (La. 2006). Manslaughter, meanwhile, is a responsive verdict to second degree murder. *State v. Lombard*, 486 So.2d 106, 111 (La. 1986). It includes a homicide which would otherwise be first or second degree murder that is "committed in sudden passion or heat of blood immediately

---

[3] The petitioner contends that "after reviewing the preponderance of the evidence in a light most favorable to the prosecution, any rational trier of fact could reasonably infer that the homicide was perpetrated in self-defense." Doc. 1, att. 2, pp. 14–15. We note first that this claim requires reviewing all of the evidence presented at trial, rather than a preponderance of it, even if some evidence was admitted erroneously. *McDaniel v. Brown*, 130 S.Ct. 665, 672 (2010).
[4] On federal habeas review, a court defers to the substantive elements of the offense as defined by state law. *Weeks v. Scott*, 55 F.3d 1059, 1062 (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)).

-12-

caused by provocation sufficient to deprive an average person of his self-control and cool reflection." LA. REV. STAT. § 14:31(A)(1). To justify a reduction from second degree murder to manslaughter, a defendant must show sufficient provocation by a preponderance of the evidence. *Lombard*, 486 So.2d at 111.

Under Louisiana law, a homicide is justifiable if it is "committed in self-defense by one who reasonably believes that he is imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." LA. REV. STAT. § 14:20(A)(1). When a defendant claims self-defense, it is the state's burden to disprove this element beyond a reasonable doubt. *State v. Richards*, 956 So.2d 160, 170 (La. Ct. App. 3d Cir. 2007).

In April 2009 the petitioner was estranged from his wife, Debra (also the victim's mother), who was staying at a women's shelter with their two minor children, Q.B. and M.B. Doc. 22, att. 8, pp. 98–100. On the morning of the shooting, the petitioner had checked his minor son, Q.B., out of school without Debra's knowledge. Doc. 22, att. 7, pp. 96–101. He brought Q.B. back to the family home and made him call Debra to demand that she bring M.B. over as well. *Id.* He also asked Q.B. several questions about the shelter in an apparent attempt to discover its location. *Id.* at 100–01. Q.B. testified that he was afraid of the petitioner and ran barefoot to a neighbor's house when the petitioner went to the restroom. Doc. 22, att. 8, pp. 1–2.

Q.B. and Debra were reunited at a pharmacy but received a call on their way back to the women's shelter that the petitioner was holding Debra's cousin and her family hostage and demanding that Debra bring the children to him. *Id.* at 4; doc. 22, att. 9, pp. 3–10. Debra then headed to her cousin's house, calling law enforcement on the way. Doc. 22, att. 9, pp. 3–10. This was Sergeant Guillory's first encounter with petitioner about which he testified at trial and which was discussed *supra*.

The victim's girlfriend, Yvette Jones, testified that she and the victim had plans to spend the evening together. Doc. 22, att. 8, pp. 22–24. However, he called her after work at around 9:00 p.m., while on his way to the petitioner's house to retrieve some clothes, to say that he had been in contact with both parents and "their stories weren't adding up." *Id.* Debra also testified that she received a call from the victim shortly after nine stating that he was on his way to the petitioner's house. Doc. 22, att. 9, pp. 10–11. She related her side of events to the victim and asked him to retrieve some items from the petitioner. *Id.* at 10–11, 13.

Debra testified that she received a call from the victim roughly an hour later, and that he pleaded with her to talk to the petitioner. *Id.* at 13–14. She then heard the victim saying "put the gun down," followed by three gunshots. *Id.* at 14. Debra stated that she heard no sound other than her son begging the petitioner to put down his weapon and asking his mother to speak to the petitioner. Law enforcement found no sign of a physical altercation at the house. *Id.* at 18–19; *see*, e.g., doc. 22, att. 8, pp. 75–76 (testimony of Detective Keith Dupre).

Three shots were fired.  One lodged in a doorframe, the next grazed the victim's head from back to front, and the third, the "kill shot," struck the victim in the back. Doc. 22, att. 8, pp. 53–59; doc. 22, att. 10, pp. 9–10, 16. The victim's body was left lying face-down on the steps leading up to the house, with his head and shoulders in the carport and the lower part of his body extended across the steps. Doc. 22, att. 7, p. 12. The medical examiner testified that the victim turning away from the petitioner at the time the second shot was fired would account for the direction of the graze wound and that the shot to the victim's back would have left him unable to move any farther after he was struck. Doc. 22, att. 10, pp. 10, 16.

The petitioner alleges that the prosecution failed to refute his claim that he shot his son in self-defense. He alleges in the alternative that the evidence supports, at most, a verdict of

manslaughter. To this end he points to testimony regarding numerous instances where the victim had destroyed property or menaced other people. *See* doc. 22, att. 9, pp. 32–79. He also points to his own testimony that on the night of the shooting, i.e. that the victim had entered his home while he slept, roused him, and demanded that the petitioner turn over items including Q.B.'s school clothes and book sack. Doc. 22, att. 11, pp. 54–55. The petitioner testified that he called 911 for assistance as his son was "acting crazy" but a bit later he informed 911 that his son had calmed down. *Id.* at 55–56. The petitioner testified then, however, that the victim "sprang into action," breaking into the shed to retrieve a shotgun, even though petitioner had actually stowed the shotgun in his bedroom and it is petitioner who retrieved the weapon. *Id.* at 56. According to the petitioner's trial testimony the victim ran back into the house, threatening to kill the petitioner, at which time petitioner drew his weapon and fired a warning shot. *Id.* at 56–57. The petitioner testified that the victim continued to advance and he fired once more. *Id.* When he saw that the victim was no longer moving, the petitioner called 911 again and then called Debra. *Id.* at 57. Petitioner could not reconcile his account with the fact that the victim was shot in the back nor could he explain the testimony about the victim calling his mother during the encounter. *Id.* at 78–80.

The testimony and evidence presented at trial was enough to support that the petitioner had fired on the victim with specific intent to kill or inflict great bodily harm. The petitioner's testimony, in light of its conflicts with other accounts presented at trial, does not establish the provocation requirement for a reduction to manslaughter. Meanwhile, the discrepancies shown in the petitioner's account, such as the fact that the victim was facing away from the petitioner when the fatal shot was fired, are enough to support the state's claim that the murder was not committed in self-defense. Thus, under the "twice-deferential" standards described above, the petitioner demonstrates no right to relief under this claim.

### *3. Ineffective Assistance of Counsel*

Lastly, the petitioner claims that he was denied his constitutional right to counsel because his trial attorney failed to investigate the case or present mitigating evidence against the state's theory of the case.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

The petitioner's claim of deficient performance relies on several confusing and often conclusory assertions. From these we can discern the following allegations: 1) trial counsel failed to investigate the petitioner's mental instability and present evidence of same at trial, 2) trial counsel failed to challenge the state's theory of the case by arguing Sergeant Shane Guillory might have moved the victim's body or that Guillory and Fire Chief Michael Arnold committed perjury,

and 3) trial counsel failed to explain to the petitioner that he had a Fifth Amendment right against self-incrimination.

### a. Failure to investigate and present evidence relating to mental instability[5]

The petitioner first alleges that trial counsel performed deficiently by not calling Alicia Pellegrin, a psychologist, to testify at trial on the petitioner's mental condition. However, he makes no showing of Pellegrin's availability to testify or what the substance of her testimony would have been. Accordingly, he shows no deficient performance under this portion of the claim.

The petitioner then alleges generally that trial counsel was deficient in investigating the petitioner's psychological or medical history. As a result, he maintains, trial counsel failed to provide adequate support for the petitioner's contention that he had acted in self-defense or at reasonable provocation from the victim. He points to the testimony of Dr. Brian Heinen,[6] a family practice physician who had treated the petitioner since February 2005, to show that trial counsel had enough indication of the relevance of petitioner's mental health to the defense to necessitate further investigation. *See* doc. 22, att. 10, pp. 47–48.

It is unclear from petitioner's argument, however, exactly how additional investigation of his psychological or medical history would have advanced his defense of self-defense or provocation by the victim. Neither is it clear how additional information of petitioner's

---

[5] Although petitioner's pleading is not very clear on this point, we, along with respondent, interpret the argument to include an allegation that trial counsel performed deficiently in arguing the petitioner's mental incapacity to the sanity commission. Doc. 22, att. 1, p. 22. We find no such allegation, but agree that there is nothing in the record or petition to support a claim of deficient performance under it. Trial counsel filed a motion for psychiatric examination to determine the petitioner's competency, which the trial court granted. Doc. 22, att. 5, p. 73. Following an apparent change in plea the petitioner was evaluated by three examiners, all of whom noted his history of psychological issues and other capacity-related issues. Doc. 22, att. 5, pp. 79–80; *id.* at 93–100; doc. 22, att. 6, pp. 1–7. However, all three examiners agreed that the petitioner was competent to stand trial. Doc. 22, att. 5, pp. 93–100; doc. 22, att. 6, pp. 1–7. The petitioner does not show what additional information would have changed the findings of his sanity commission. Accordingly, he cannot satisfy either prong of *Strickland*, if in fact he intends to allege deficient performance relating to his sanity commission.

[6] Heinen testified at trial that he diagnosed the petitioner with depression in November 2005. Doc. 22, att. 10, p. 49. He also recalled the petitioner's various medical issues and how the stress from those might have created a "vicious cycle" with his mental health. *Id.* at 49–52.

psychological or medical history would merit a verdict of manslaughter rather than second degree murder. Trial counsel did present evidence of a history of incidents between the petitioner and the victim, including petitioner's own testimony, and attempted to bolster that evidence through cross-examination of the state's witnesses.[7] Counsel also thoroughly cross-examined law enforcement witnesses who had been on the scene on the night of April 20, 2009, in an attempt to refute the state's contention that no struggle preceded the shooting.[8]

The petitioner does not show what other mitigating or exculpatory evidence trial counsel might have presented relative to their defenses and the record reflects that trial counsel performed diligently in attempting to refute the state's theory of the case. Accordingly, the petitioner does not satisfy *Strickland*'s first prong under this portion of the claim.

### b. *Failure to argue that Guillory tampered with the scene and that Guillory and Arnold committed perjury*

The petitioner also alleges that trial counsel performed deficiently in his failure to challenge the accounts offered by Guillory and Arnold, which he alleges were perjurious. He does not allege what the perjury was or how his attorney might have supported any challenge to same. On his contention that Guillory tampered with the scene, he only offers a litany of excerpts from the testimonies of Guillory, EPSO detective Keith Dupre, and former EPSO patrolman Travis Basco. *See* doc. 23, p. 3; doc. 26, pp. 2–3. He does not connect these excerpts to any theory of how the

---

[7] *See* doc. 22, att. 11, pp. 53-60 (testimony of plaintiff; *id.* at p. 34 (introduction into evidence of protective order filed by petitioner against victim in February 2008); *id.* at 2–8 (testimony of EPSO patrol supervisor on May 2007 domestic dispute between petitioner and victim); doc. 22, att. 10, pp. 86–94 (testimony of former EPSO shift sergeant on January 2009 domestic dispute between Debra Bushnell and victim); *id.* at 25–40 (testimony of Evangeline Parish 911 executive director on various 911 calls made relating to Bushnell family between December 2006 and January 2009); *see also* doc. 22, att. 8, pp. 7–12 (cross-examination of Q.B.); *id.* at 27–29 (cross-examination of Yvette Jones); doc. 22, att. 9, pp. 37–78 (cross-examination of Debra Bushnell).

[8] *See* doc. 22, att. 7, pp. 29–42 (cross-examination of Shane Guillory); *id.* at 49–51 (cross-examination of EPSO sergeant Jeremy Mitchell); *id.* at 61–64 (cross-examination of Michael Arnold); *id.* at 87–91 (cross-examination of Travis Basco, who was then a patrolman with the EPSO); doc. 22, att. 8, pp. 37–41 (cross-examination of EPSO patrolman Kevin Tate); *id.* at 78–84 (cross-examination of EPSO detective Keith Dupre).

scene might have been tampered with or otherwise mishandled. He therefore provides no support for this portion of the claim and demonstrates no right to relief.

### c. *Failure to explain Fifth Amendment rights*

Finally, the petitioner asserts that trial counsel failed to advise him of his right against self-incrimination. It is unclear whether this allegation relates to the petitioner's decision to take the stand, to his *Miranda* violation claims, or to some other matter. At any rate, the vague and conclusory assertion is insufficient to show deficient performance, much less adequate prejudice.

The petitioner has not satisfied *Strickland* under any portion of his ineffective assistance claim. Accordingly, he shows no right to federal habeas relief.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

    THUS DONE this 8th day of November, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE